UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LORETTA ANN SWEENEY,

                                    Plaintiff,

                                                          **Hon. Hugh B. Scott**

            v.                                            **16CV336V**

                                                          **Report**
                                                          **and**
NANCY A. BERRYHILL[1], Acting                            **Recommendation**
Commissioner of Social Security,

                                    Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 18 (plaintiff), 24 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Loretta Sweeney" or "plaintiff") filed an application for disability

insurance benefits on October 29, 2012.   That application was denied initially and on

reconsideration.   The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

considered the case de novo and concluded, in a written decision dated December 10, 2014, that

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security, became Acting Commissioner of Social Security.   Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for now former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

the plaintiff was not disabled within the meaning of the Social Security Act.   The ALJ's

decision became the final decision of the Commissioner on March 3, 2016, when the Appeals

Council denied plaintiff's request for review (R. 1).

Plaintiff commenced this action on April 26, 2016 (Docket No. 1).   The parties moved

for judgment on the pleadings (Docket Nos. 18, 24).   After extensions (Docket Nos. 20, 26

(motions), 21, 27 (Orders)), the motions were deemed submitted on May 24, 2017 (Docket

No. 27).

## FACTUAL BACKGROUND[2]

Plaintiff was born on October 17, 1973, and has a limited education (R. 26); she attended

special education classes in school but only completed the tenth grade (R. 22, 353).   During the

ALJ's hearing, he found that she had a limited ninth grade education (R. 73).   She was last

employed on March 24, 2012 (her onset date) working as a hand packager (R. 25).

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff has claimed impairments are asthma, bipolar disorder, and panic disorder with

agoraphobia (R. 19, 22).   She claimed disabilities that she had attentional problems and

difficulty getting along with people (R. 22).   She also claimed impairments for hypertension,

obesity, attention deficit hyperactivity disorder (in remission with medication), and probable

borderline intellectual capacity each deemed by the ALJ to be nonsevere (R. 19).

The ALJ found, however, that plaintiff's asthma did not meet the requirements for

Listing 3.03 (R. 19).   While conceding that plaintiff has asthma, Dr. Hongbiao Liu, the

---

[2]References noted as "(R.__)" are to the certified record of the administrative
proceedings, filed with this Court as Docket No. 23, as corrected, cf. Docket No. 8 (original
Administrative Record).

consultative examiner, found that plaintiff was not in acute distress and opined that she had no limitations for routine activities due to that ailment (R. 22, 358, 359).

The ALJ next found that plaintiff did not meet Listing 12.05 for mental retardation, but found her ability to work at substantial gainful activity was evidence of adaptive function that rendered IQ testing unnecessary (R. 20). The ALJ, however, did take into account plaintiff's limited intellectual capacity in the residual functional capacity assessment (R. 20). Applying "paragraphs B and C" criteria of Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders) for mental impairments, the ALJ found that the severity of plaintiff's mental impairments (singly or in combination) did not meet either listing's criteria (R. 20-21). The ALJ noted that plaintiff had only mild restrictions in activities of daily living; moderate difficulties in social functioning and in concentration, persistence or pace; and had no episodes of decompensation (R. 20). The ALJ did not find evidence of the "paragraph C" criteria because there was no "medically documented history of a chronic organic mental disorder or a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities" (R. 21).

The ALJ found that plaintiff did suffer from bipolar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder, the last she was treated for since childhood (R. 23). The ALJ gave "some weight" to psychological scores plaintiff obtained during treatment at Spectrum Wyoming County Mental Health Clinic from February 2011 to March 2012, but discounted these results as being "one-time assessments" (R. 23). From her treatment notes Spectrum Wyoming reported that, on February 2011, plaintiff had a score in the moderate range on the Beck's Depression Inventory around the time her mother was diagnosed with a

terminal illness (R. 315, 23), on July 2011 she had a normal Beck's Depression Inventory range (R. 299, 23), and again a moderate range on the Beck's Depression Inventory on March 2012 (R. 315, 23). On October 30, 2012, plaintiff has a Global Assessment of Functioning ("GAF") score of 50, according to the <u>Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition</u> ("DSM-IV"), with a score in the range of 41-50 indicating serious symptoms or any serious impairment in social, occupational, or school functioning (R. 352, 23).

On January 14, 2013, Dr. Christine Ransom, Ph.D., performed a psychiatric consultative examination of plaintiff (R. 357, 23). Dr. Ransom opined that plaintiff would have moderate difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule, and learning new tasks (R. 355, 23). According to Dr. Ransom, plaintiff also would have moderate to marked difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress due to bipolar disorder, currently moderate to marked; panic disorder with agoraphobia, currently moderate, and probable borderline intellectual capacity (R. 355-56, 23), finding that these "results of the evaluation are consistent with the claimant's allegations" (R. 356). The ALJ gave "significant weight" to Dr. Ransom's opinion, finding that it was consistent with plaintiff's record (R. 23).

State agency doctor Dr. Juan Echevarria completed a mental residual functional capacity assessment of plaintiff on January 18, 2013 (R. 81, 24). The doctor found that plaintiff was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and work in coordination with or in proximity to others without being distracted by them (R. 86-87, 24). He reported that plaintiff had moderate limitations in all

other areas pertaining to understanding and memory, sustained concentration and persistence, social interaction, and adaptation (R. 85-87, 24).

At issue here is the mental residual functional capacity evaluation by Dr. Robert Young on July 3, 2014 (R. 423, 24-25). That questionnaire indicates the Dr. Young had first treated plaintiff on June 17, 2017 (R. 419, 24). Dr. Young found that plaintiff was "precluded from performing in a regular work setting with regard to remembering work-like procedures, carrying out very short and simple instructions, maintaining regular attendance and being punctual within customary usually strict tolerances, sustaining an ordinary routine without special supervision, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods" (R. 24, 421). Dr. Young also found that plaintiff "is precluded from performing in a regular work setting with regard to all abilities and aptitudes necessary to interact socially and adapt to the environment (R. 24, 422), with plaintiff only able to work no more than twenty percent of an eight-hour workday and opined that she could not work in an competitive work environment at all (R. 24, 422). Dr. Young found that plaintiff would likely miss about three days a week because of her impairments or treatment (R. 24, 423 (plaintiff would miss three days a <u>month</u>)). He believed that increased stress and expectations would aggravate plaintiff's manic/depressive episodes (R. 24, 423). Dr. Young also noted plaintiff was noncompliant with medication (R. 24, 423).

The ALJ acknowledged that Dr. Young had a treating relationship with plaintiff but accorded only "limited weight" to the doctor's opinion because of the brevity of the treating relationship (sixteen days) and that this opinion was "presumably . . . based on the claimant's

reports rather than personal observation" (R. 25). Plaintiff disputes this duration contention (Docket No. 18, Pl. Memo. at 14-19), as is argued below.

The ALJ concluded "while the claimant has some impairments, nothing in the record shows that they are disabling" (R. 25). The ALJ deemed plaintiff's described daily activities not to be as limiting as would be expected given her complaints and symptoms (R. 25). Plaintiff occasionally cooks, cleans three times a week, and does the laundry weekly (R. 25, 357). Plaintiff also helps her son deliver newspapers (R. 25, 217). The ALJ found that plaintiff also did not receive medical treatment commensurate with her claimed impairments (R. 25), with the ALJ noting plaintiff's history of noncompliance with medication (R. 25, 423, 24).

*Residual Functional Capacity Assessment*

The ALJ found that plaintiff had a residual functional capacity with the ability to work at all exertional levels. Her residual functional capacity "has been compromised by nonexertional limitations" (R. 26), with nonexertional limitations avoid fumes; understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; rarely work in a low stress work environment; able to consistently maintain concentration and focus for up to two hours at a time (R. 21). The ALJ concluded that this residual functional capacity assessment was supported by the opinions of Drs. Liu and Ransom (R. 25).

While conceding that plaintiff had some impairments, the ALJ found that the record did not show that any of them were disabling (R. 25). The ALJ points out that plaintiff is occasionally able to cook; she cleans her home three times a week, does laundry weekly, and helps her son with newspaper delivery (R. 25, 22). The ALJ concluded that plaintiff's daily activities "have, at least at times, been somewhat greater than the claimant has generally

reported" (R. 25). The ALJ also noted that "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual" (R. 25), not consistently seeking treatment and having a history of noncompliance with medication (R. 25).

Plaintiff was unable to appear at the hearing (although her attorney was present), so the ALJ offered another adjournment to plaintiff, denied her leave to appear by telephone, took the testimony of the vocational expert and deemed plaintiff waived her right to appear (R. 22, 71-72; see Docket No. 24, Def. Memo. at 2). Nevertheless, the ALJ found that plaintiff's statements in the record about the intensity, persistence, and limiting effects of her symptoms were not entirely credible (R. 22).

Based upon the opinion of the vocational expert (R. 74), the ALJ found that plaintiff could not perform her past relevant work as a hand packer (unskilled job requiring medium exertion) (R. 25-26). Testing the extent nonexertional limitations have on plaintiff's ability to perform any work, the ALJ posed to that expert whether jobs exist in the national economy for a hypothetical claimant of plaintiff's age, education, work experience, and residual functional capacity (R. 26). That first hypothetical posed had a claimant who "mentally is able to understand, remember and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors, rarely work in conjunction with coworkers; little to no contact with the general public; [i]s able to work in a low-stress work environment, and that is no supervisory duties, no independent decision making required, no strict production quotas, minimal changes in work routine and processes" (R. 74). The expert opined that such a claimant could not perform plaintiff's past medium work but could perform such occupations as addresser (unskilled, sedentary job), mail clerk (unskilled, light exertion job); or garment folder (unskilled, light

exertion job) (R. 26-27, 73-75).   The second hypothetical added the amounts of weight that

claimant could lift or carry (R. 74-75); the expert opined that the garment folder would not be

appropriate for that claimant (R. 75).   Plaintiff's counsel then asked the vocational expert about

the reasoning levels required for addresser, mail clerk, and garment folder (R. 76), distinct from

the SVP[2] with addresser at a level 2 and mail clerk at level 3, and garment folder at SVP 3 (R.

76-77).

      Reasoning level is part of the analysis for general educational development, defined in

the Dictionary of Occupational Titles, composed of three divisions including reasoning

development, Dictionary of Occupational Titles, Appendix C, Component of the Definition

Trailer.   Reasoning Level 02 (that for an addresser, R. 76) is defined to require an employee to

"apply commonsense understanding to carry out detailed but uninvolved written or oral

instructions.   Deal with problems involving a few concrete variables in or from standardized

situations," while a mail clerk (level 03, R. 76) requires an employee "apply commonsense

understanding to carry out instructions furnished in written, oral, or diagrammatic form.   Deal

with problems involving several concrete variables in or from standardized situations," id.   SVP,

on the other hand, differs because it measures the amount of training time required to learn a job,

id.

**DISCUSSION**

---

[2]Or Specific Vocational Preparation, "defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation," Dictionary of Occupational Titles, Appendix C:   Components of the Definition Trailer.   The levels (from 1 to 9) for SVP indicate the amount of time for that training.   Level 1 is short demonstration only, 2 is beyond a short demonstration up to 1 month, 3 is over 1 month to 3 months, and 9 is over ten years, id.

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. <u>See</u> 42 U.S.C. § 405(g); <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. National Labor Relations Bd.</u>, 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of Social Security Insurance, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the

national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has been done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982);

Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.   Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff claims that the ALJ failed to give good reasons for giving limited weight to the findings of her treating physician, Dr. Robert Young (Docket No. 18, Pl. Memo. at 13-20).   The ALJ found that Dr. Young had only a brief treating history with plaintiff, for only sixteen days, when the doctor opined in the mental residual functional capacity assessment questionnaire (R. 24-25, 418, 419) and therefore the ALJ believed that Dr. Young based his opinion only on plaintiff's reports rather than the doctor's own observation (R. 25). The ALJ accepted that Dr. Young first saw plaintiff on June 17, 2014 (R. 419, 24), but rendered the mental capacity assessment on July 3, 2014 (R. 424, 24).   Plaintiff disputes this, arguing that Dr. Young had been seeing plaintiff far longer (Docket No. 18, Pl. Memo. at 15, R. 263-66, 267, 322, 323 (medication flow charts), 325-27 (psychiatric evaluation July 30, 2009)).

Plaintiff also contends that the ALJ failed to reconcile the opinions of the consultative examiner, resulting in what plaintiff believes to be a determination not based on substantial evidence (Docket No. 18, Pl. Memo. at 20-25; Docket No. 28, Pl. Reply Memo. at 1-4).   She also argues that the ALJ's credibility determination (R. 22; see R. 25) was improper and warrants remand (Docket No. 18, Pl. Memo. at 25-29).

I.      Treating Physician

   A.  Dr. Young and July 2014 Assessment

        Plaintiff faults the ALJ for not recognizing that Dr. Young had treated plaintiff since

June 2009 (Docket No. 18, Pl. Memo. at 14-15; Docket No. 28, Pl. Reply Memo. at 3; R. 325-27,

263, 264, 266, 267, 273, 322, 274, 323, 325-27 (2009 evaluation), 269, 401-02, 309, 311, 313

(Feb. 23, 2012, evaluation)).   Plaintiff invokes the "good reason rule" codicil to the treating

physician rule that requires the ALJ to give good reasons for the weight given to the physician's

opinion (Docket No. 18, Pl. Memo. at 13-14), McCarthy v. Colvin, 66 F. Supp.3d 315, 323

(W.D.N.Y. 2014) (Telesca, J.).   She points out that she was seen by a doctor at the Wyoming

County Mental Health Clinic (where Dr. Young practiced) "43 times plus 9 times" between

April 17, 2009, and August 24, 2011 (Docket No. 18, Pl. Memo. at 15).   Plaintiff was

discharged on December 14, 2011, but she resumed treatment there two months later (id.; R. 201,

398).   Some of these entries in her medical record are by nurses at the Wyoming County Mental

Health Clinic.   She concludes that the ALJ improperly rejected evidence in reliance upon his

misstatement of the record (Docket No. 18, Pl. Memo. at 16), see Ellis v. Colvin, 29 F. Supp.3d

288, 302 (W.D.N.Y. 2014) (Telesca, J.) (improper for ALJ to bolster the RFC assessment with a

blatant misstatement of the record); Pierce v. Astrue, 946 F. Supp.2d 296 (W.D.N.Y. 2013)

(Telesca, J.).

        Defendant responds that Dr. Young stopped treating plaintiff in 2010 (Docket No. 24,

Def. Memo. at 19; R. 263-64, 266-67, 269, 325-27).   Plaintiff was later seen by nurse

practitioner Elizabeth Masco (R. 274-75, 402).   Although she returned to the Wyoming Mental

Health Clinic in 2014, Dr. Young did not see her (Docket No. 24, Def. Memo. at 20).

Dr. Young stated in his July 2014 assessment that his treatment began (or actually resumed) days before in June 2014 (R. 419, 24). Furthermore, plaintiff's symptoms in 2014 were more severe than those in 2009-10 (id.). While the ALJ gave limited weight to Dr. Young's opinion based upon believing that he treated plaintiff only for sixteen days, the ALJ relies upon Dr. Young's finding (R. 423) that plaintiff has a history of non-compliance with taking medication.

Plaintiff combines the Wyoming County Clinic treatment and attributes it to Dr. Young to establish a history for plaintiff, although Dr. Young did not recall in 2014 that plaintiff had been treated there before and being treated by him. Plaintiff points to psychiatric evaluations by Dr. Young in 2009 (R. 325-27) and February 2012 (R. 309, 311, 313) before the onset date (the latter was conducted by NPP Masco but was reviewed by Young). Plaintiff has shown continuous treatment by Dr. Young and the Wyoming County Mental Health Clinic that the ALJ failed to acknowledge.

Defendant argues that Dr. Young "co-signed" the 2014 assessment (Docket No. 24, Def. Memo. at 19; R. 424), with the form completed by plaintiff's primary therapist, Patricia Baron-Mills (R. 424). But the ALJ erred in relying upon Dr. Young and his forgetting that he (and his clinic) had treated plaintiff before the 2014 assessment. Plaintiff produced a consistent treatment record from Wyoming County clinic for five years before the 2014 assessment. The ALJ therefore should have considered this record and not merely the erroneous statement in the July 2014 assessment that made it appear that plaintiff had only seen Dr. Young for sixteen days prior to the 2014 assessment.

B.     Remand

Plaintiff urges remand only for calculation of benefits (Docket No. 18, Pl. Memo. at 19).

But there are issues (as discussed below) that need to be resolved to determine if plaintiff is

disabled before calculating her damages.   Therefore, remand **should not be only** for calculation

of benefits.

C.     Result

As to this ground, the consideration of Dr. Young's opinion and the Wyoming County

clinic records, plaintiff's motion (Docket No. 18) for judgment should be **granted** but the

remand should not be limited to calculation of benefits.

For a complete consideration, this Court next addresses plaintiff's other objections.

II.     Reconciling Opinions

Next, plaintiff objects to the ALJ rejecting "without reason" the review findings of the

consultative examiner Dr. Ransom and the state agency review psychologist Dr. Echevarria that

plaintiff had "marked and moderate limitations" to understand, follow and perform simple work

(Docket No. 18, Pl. Memo. at 20, 21-22; R. 354, 85, 21, 23).   The ALJ gave "significant

weight" to Dr. Ransom's opinion (R. 23), finding that it supported the residual functional

capacity assessment reached (R. 25), which included nonexertional limitations on her ability to

understand and implement simple tasks (R. 21).   Although claiming to give significant weight to

Dr. Echevarria's opinion, the ALJ found that plaintiff was able to understand, remember, and

carry out simple instructions (Docket No. 18, Pl. Memo. at 22; <u>see</u> Docket No. 28, Pl. Reply

Memo. at 1-3; R. 24).   In her reply, plaintiff also argues that Dr. Echevarria opined that she had

a moderate limitation in the ability to sustain an ordinary routine without special supervision

(R. 87), that the ALJ disregarded this in determining her residual functional capacity (Docket No. 28, Pl. Reply at 1).

Defendant responds that Dr. Ransom found that plaintiff had moderate or marked difficulties with <u>complex</u> tasks (R. 355-56, 23; Docket No. 24, Def. Memo. at 24), while only finding moderate difficulties as to simple tasks (R. 355-56, 223; Docket No. 24, Def. Memo. at 24). Similarly, Dr. Echevarria noted marked limitations regarding <u>detailed</u> instructions, rather than simpler ones (R. 85-88, 24; Docket No. 24, Def. Memo. at 24).

Plaintiff nevertheless argues that the ALJ should have explained why he disregarded portions of these doctors' medical opinions in arriving at the residual functional capacity (Docket No. 18, Pl. Memo. at 20-21, citing cases). However, the ALJ here factored in plaintiff's abilities to perform simple tasks as <u>nonexertional</u> limitations (R. 21). Plaintiff misreads the residual functional capacity assessment here (R. 21) that named as a nonexertional limitation plaintiff's ability to "understand, remember, and carry out simple instructions and tasks" (<u>see</u> Docket No. 24, Def. Memo. at 23, 24-25).

Moderate limitation in some components of the demands for simple work (<u>see</u> SSR 85-15) has been held not to necessarily preclude the ability of the claimant to perform simple work generally, <u>see</u> <u>Whipple v. Astrue</u>, 479 Fed. App'x 367, 370 (2d Cir. 2012) (summary Order) (Docket No. 24, Def. Memo. at 25 & n.6). The basic mental demands for simple work include understanding, remembering, and carrying out simple instructions; making simple work-related decisions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in routine work setting, SSR 85-15 (Docket No. 24, Def. Memo. at 25 n.6). Review of plaintiff's entire residual functional capacity (R. 21) addresses each of these demands.

In addition to nonexertional limitations regarding plaintiff's ability to understand and carry out simple instructions, the assessment states that she should have little interaction with supervisors and coworkers; she should be able to work in a low stress environment (without independent decision-making and with minimal changes to work routine).

Thus, the residual functional capacity assessment here is reconciled with these doctors' opinions. As a result, plaintiff's motion (Docket No. 18) for judgment remanding on this basis should be **denied**.

III.     Plaintiff's Credibility

Dr. Ransom found her evaluation was consistent with plaintiff's allegations (R. 356) and the ALJ gave significant weight to Dr. Ransom's opinion "because it is generally consistent with the evidence of record" (R. 23). Despite this, the ALJ found that plaintiff was not wholly credible (R. 22), that her daily activities, her noncompliance with medication, and her medical treatment. suggest that she was not as disabled as claimed (R. 25).

This Court also notes that plaintiff did not testify at the hearing before the ALJ. She was not present due to transportation issues and was denied leave to appear by telephone. (R. 22.) Her attorney stated that her transportation would remain a problem even if the hearing was adjourned but agreed to proceed taking the vocational expert's testimony and closing the record (R. 72).

Thus, the ALJ thus made credibility assessments of plaintiff merely from the written record (including from doctors the ALJ concluded had not seen her enough to render their own opinion of her condition rather than rely upon plaintiff's stated complaints) and not from her live testimony.

One fact issue arose from the brief hearing (essentially used to obtain the vocational expert's opinion) is whether plaintiff could perform at the reasoning level appropriate for the recommended occupations of addresser or mail clerk.   This differs from the general finding that plaintiff could understand and implement simple instructions (R. 23; <u>cf.</u> Docket No. 24, Def. Memo. at 26).   Addresser requires reasoning at level 02, which includes applying commonsense understating to carry out "detailed but uninvolved written or oral instructions," <u>Dictionary of Occupational Titles</u>, Appendix C.   Mail clerk requires level 03 reasoning, which requires an understanding of written or diagrammatic instructions and the ability to deal with problems with several concrete variables.   This record poses the following questions:   Can plaintiff reach that level of understanding or does she have the ability to deal with problems that are more complicated?

While the medical record sheds some light on this, the better way to seek confirmation from plaintiff's testimony before the ALJ is for the ALJ to assess her credibility (including her skills in understanding the ALJ or counsel's instructions during the proceeding).   But absent plaintiff's presence, that credibility assessment could not have been performed.   This matter thus **should be remanded** to allow plaintiff that opportunity.   The transportation issues plaintiff had when the hearing was scheduled in 2014 hopefully has been resolved and she could appear at a remanded proceeding (with her risking an adverse outcome if the ALJ had to resort only to the paper record to address this new issue).

Therefore, plaintiff's motion for judgment (Docket No. 18) **should be granted** and defendant's motion for judgment (Docket No. 24) in the Commissioner's favor **should be denied**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 24) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 18) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.   See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."   **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

_/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
August 16, 2017